TRIVELLA & FORTE, LLP
*Attorneys for the Plaintiffs*
1311 Mamaroneck Avenue, Suite 170
White Plains, NY 10605
(914) 949-9075

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x
THOMAS GESUALDI, LOUIS BISIGNANO, DARIN JEFFERS, MICHAEL O'TOOLE, MICHAEL BOURGAL, FRANK H. FINKEL, JOSEPH A. FERRARA, SR., MARC HERBST, DENISE RICHARDSON, and THOMAS CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund,

Case No.: 18-CV-6767

**COMPLAINT**

Plaintiffs,

-against-

HAROLD H. ANTHONY, INC.,

Defendant.
------------------------------------------------------------------------------x

Plaintiffs THOMAS GESUALDI, LOUIS BISIGNANO, DARIN JEFFERS, MICHAEL O'TOOLE, MICHAEL BOURGAL, FRANK H. FINKEL, JOSEPH A. FERRARA, SR., MARC HERBST, DENISE RICHARDSON, and THOMAS CORBETT as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds"), for their Complaint, by their attorneys Trivella & Forte, LLP, allege as follows:

**INTRODUCTION**

This is an action by the Trustees and fiduciaries of employee benefit plans for injunctive and monetary relief, plus interest, liquidated damages, attorneys' fees and costs under Sections

1

502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132 and 1145, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §§ 1381, *et seq*. ("MPPAA"), and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185.  This action arises from the failure and refusal of Defendant HAROLD H. ANTHONY, INC., (hereinafter as "HAROLD ANTHONY" or the "Company") to: (i) pay amounts determined due and owing under Audit No. 17-0922-A1; (ii) reported but underpaid contributions, plus interest, liquidated damages, and attorneys' fees and costs; (iii) bounced check fees; and (iv) to submit remittance report to the Funds, as required by ERISA, the Trust Agreement governing the Funds, and the applicable collective bargaining agreement.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Sections 502(e), 502(f), 515 and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f), 1145, and 1451(c).

2. Venue lies in this District pursuant to Sections §§ 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), as the Funds are administered in this District, and Defendant's place of business is located in this District.

## PARTIES

3. Plaintiffs are Trustees and fiduciaries of the Funds and, collectively, are the "plan sponsor" within the meaning of Section 3(l6)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii).  The Trustees are fiduciaries of the Funds, as defined in Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

4. The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. § 1002(3) and § 1002(37) with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

2

5. The Funds are jointly administered by a Board of Trustees, with equal representation of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5).

6. The Funds were established pursuant to the terms of various collective bargaining agreements between Building Material Teamsters Local 282 ("Local 282" or "Union"), a labor organization representing workers in an industry affecting commerce, and various employers, including HAROLD ANTHONY, which are required to make contributions to the Funds on behalf of their workers covered by the collective bargaining agreements.

7. The Funds are maintained pursuant to the terms of the Amended and Restated Agreement and Declaration of Trust ("Trust Agreement"), which is incorporated by reference into the collective bargaining agreements. The Funds provide various pension, health and welfare, annuity, job training, vacation and sick leave, and legal services benefits to covered workers, retirees and their dependents.

8. The collective bargaining agreements and the Trust Agreement are plan documents within the meaning of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). The Funds are third-party beneficiaries of the collective bargaining agreements.

9. Upon information and belief, HAROLD ANTHONY at all times relevant to this action was and is, a New York domestic business corporation doing business with registered office with the Department of State at 31-43 Vernon Boulevard, Long Island City, New York 11106, and having offices of doing business located at 8-31 Astoria Blvd, Astoria, New York 11102.

10. HAROLD ANTHONY at all times relevant to this action was and is, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and Article I, Section 1 of the Trust Agreement.

**FACTUAL BASIS FOR CLAIMS**

The Collective Bargaining Agreement, the Trust Agreement and
the Obligations to Contribute to the Funds

11. At all times relevant to this action, HAROLD ANTHONY was a signatory to the Building Material Suppliers Industry Contract in effect for the period July 1, 2009 through June 30, 2011, renewed for the period July 1, 2011 through June 30, 2014, and currently in effect, as renewed, for the period July 1, 2014 through June 30, 2018 (the "CBA").

12. At all times relevant to this action, HAROLD ANTHONY agreed to be bound by the Trust Agreement, which is incorporated by reference into the CBA.

13. The CBA expressly provides that the Employer is bound to the Trust Agreement.

14. At all times relevant to this action, the CBA requires Employers, including HAROLD ANTHONY, to submit remittance reports to the Funds which identify the employees who performed work covered by the CBA and to state the number of hours each such employee worked in covered employment.

15. Along with the remittance reports, the CBA also requires Employers, including HAROLD ANTHONY, to remit contributions to the Funds on behalf of all employees who performed work covered by the CBA, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBA.

16. Article IX, Section 1(e) of the Trust Agreement further provides that an Employer who fails to submit the required remittance reports and/or pertinent books and records within twenty days of written demand must pay an increased monthly contribution, which is computed by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the "base month"). This Section of the Trust Agreement further provides

4

that: (1) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours plus 10% thereof shall be added to arrive at the total number of covered hours, and (2) if there is no base month because there are no previous remittance reports or audit reports, then the Employer shall be deemed to have the number of employees that the Union reports in writing that the Employer is employing, with each employee deemed to have worked 40 hours per week for the entire unreported period. Once a total number of covered hours is arrived at by the above-described methods, it is multiplied by the current contribution rates to arrive at the Employer's liability for monthly contributions.

17. The Trust Agreement provides that if the Employer fails to remit contributions by the date due, the Employer is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year) from the date when payment was due to the date when payment was made; (iii) an amount equal to the greater of (a) the amount of interest charged on the unpaid contributions, or (b) liquidated damages in the form of 20 percent of the unpaid contributions; and (iv) the Funds' attorneys' fees and costs.

18. Article IX, Section 4 of the Trust Agreement, with the sanction of Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), authorizes the Trustees to bring actions to enforce an Employer's obligations to the Funds under its collective bargaining agreements with Local 282, including the obligation to make contributions to the Funds.

19. Article IX, Section 3 of the Trust Agreement, with the sanction of Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B), requires payment of interest on unpaid contributions at the rate of 1.5 percent per month from the date the payment was due until it is received.

20. Article IX, Section 3(c) of the Trust Agreement, with the sanction of Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C), requires payment of additional damages equal to the greater of the amount of interest charged on the unpaid contributions or liquidated damages in the form of 20 percent of the unpaid contributions.

21. Article IX, Section 3(a) of the Trust Agreement, with the sanction of Section 502(g) of ERISA, 29 U.S.C. § 1132(g), requires payment of attorneys' fees incurred in collection actions, whether a suit has been filed or not, equal to the actual amount billed to the Trustees by their counsel for work performed in connection with the matter.

22. Pursuant to Article IX, Section 3, as amended, interest on unpaid contributions is calculated at the rate of 1.5 percent per month. Prior to May 1, 2013, interest accrued from the first day of the month when the contributions are due until the date payment is received.

The Trust Agreement and
the Obligation to Permit an Audit

23. The Trust Agreement requires an employer to submit to periodic audits of its relevant books and records. Specifically, Article IX, Section 1(d) of the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds."

24. Article IX, Section 1(d) of the Trust Agreement specifically defines "pertinent books and records" to include but not be limited to:

> (1) Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
>
> (2) Payroll tax records submitted to federal and state governments including Forms 941 and W-2;
>
> (3) Complete business income tax returns;

6

  (4)  Cash disbursements records;

  (5)  General ledgers;

  (6)  Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

  (7)  Any other records specifically requested by the Funds' auditors, including the classification of workers, their social security numbers, and the amount of wages paid and hours worked.

25. The Trust Agreement requires an employer to submit to audit in order to verify that all contributions required under the CBA have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered workers are receiving the required benefits and/or credits.

26. Where an audit discloses a delinquency, an employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust Agreement to (i) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (ii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iii) the Funds' attorneys' fees and costs, including the audit fee.

**Amounts Due and Owing on Account of Audit #17-0921**

27. In accordance with the Trust Agreement, the Defendant submitted its pertinent books and records to audit for the period of August 29, 2015 through December 30, 2016. The audit report was identified as Audit #17-0921. Audit #17-0921 determined that Defendant owed $78,902.64 in unpaid contributions, $2,895.76 in interest on the unpaid contributions calculated through April 3, 2017 and $500.00 in audit fees.

28. By letter dated April 3, 2017, the Funds sent a letter to Defendant with a copy of Audit #17-0921 and demanded payment for same.

29. Defendant made no payments toward the unpaid audit.

30. Subsequently, the Funds credited the Employer for overpayments determined by a concomitant audit for the same period, identified as Audit No. 17-0922.

31. The total credit amount was $21,032.22.

32. The Funds credited Audit No. 17-0921 to account for the overpayment credits on February 2, 2018.

33. After applying the credit, there remains due and owing on Audit No. 17-0921 $57,870.42 in unpaid contributions, plus interest and audit fees.

34. Defendant made no payments toward Audit No. 17-0921, which remains outstanding.

**Unpaid and Underpaid Contributions**

35. The CBA requires HAROLD ANTHONY to submit remittance reports and remit contributions for all pay periods on a monthly basis.

36. For the periods July 2016, August 2016, September 2016 and October 2016 HAROLD ANTHONY submitted remittance reports to the Funds self-reporting contributions due and owing to the Funds, but failed to remit payment of the contributions owed.

37. For the periods July 2016, August 2016, September 2016 and October 2016 HAROLD ANTHONY owes $10,006.28 in unpaid contributions.

38. The Funds, through counsel, demanded payment of the unpaid contributions.

39. To date, HAROLD ANTHONY has failed and refused to pay the unpaid/underpaid contributions for the aforementioned periods and they remain due and owing, plus interest and liquidated damages.

**Failure to Submit Remittance Reports**

40. The Trust Agreement requires employers to submit remittance to the Funds.

41. HAROLD ANTHONY has failed to submit remittance for the periods November 2016 through the present.

42. The Funds, through counsel, demanded the submission of the missing remittance reports through January 2017.

43. To date, HAROLD ANTHONY has failed and refused to submit the remittance reports, and is therefore liable for estimated contributions as determined by the methods set forth in the Trust Agreement, plus interest and liquidated damages.

**Administrative Costs for Dishonored Checks**

44. The checks remitted by HAROLD ANTHONY for payment of contributions due to the Funds for the following periods were refused for insufficient funds and returned by the Funds' bank: July 2016 (Welfare, Annuity and Vacation); August 2016 (Pension, Annuity and Vacation) and September 2016 (Welfare, Annuity and Vacation).

45. As a result of the rejection of the 9 dishonored checks, the Funds incurred administrative costs of $75.00 for each check, for a total of $675.00.

46. To date, HAROLD ANTHONY has failed and refused to reimburse the Funds for the administrative fees and they remain due and owing.

**Other amounts**

47. On information and belief, additional amounts may continue to become due and owing by the Employer to the Funds during the pendency of this action.

## AS AND FOR A FIRST CAUSE OF ACTION

48. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. Section 515 of ERISA, 29 U.S.C. § 1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement… [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

50. Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

51. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), mandates that, "[i]n any action bought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:

   a. the unpaid contributions,
   b. interest on the unpaid contributions,
   c. an amount equal to the greater of-
      i. interest on the unpaid contributions, or
      ii. liquidated damages…in an amount not in excess of 20 percent of the [unpaid contributions],
   d. reasonable attorney's fees and costs of the action, to be paid by the defendant, and
   e. such other legal or equitable relief as the court deems appropriate…".

52. HAROLD ANTHONY, by its failure to submit remittance report for the periods November 2016 to the present, is subject to an injunction ordering it to immediately submit said remittance reports and pay all of the unpaid contributions associated therewith, or alternatively, pay all estimated contributions as determined by the methods set forth in the Trust Agreement.

53. HAROLD ANTHONY, by its failure to remit the unpaid contributions it self-reported, is subject to an injunction ordering it to immediately pay all of the unpaid contributions.

54. HAROLD ANTHONY, by its failure to remit administrate fees resulting from dishonored checks submitted to the Funds is subject to an injunction ordering it to immediately pay all fees incurred by the Funds.

55. HAROLD ANTHONY is also required to pay interest on the unpaid contributions from the date when payment was due to the date when payment was made, plus liquidated damages, audit costs, attorneys' fees and costs in accordance with Article IX, Section 3 of the Trust Agreement and Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2).

56. HAROLD ANTHONY, by failing to: (i) submit self-reported contributions, (ii) submit remittance reports, and (iii) remit the fees incurred by the Funds as a result of the dishonored checks submitted by HAROLD ANTHONY, has violated Section 515 of ERISA, 29 U.S.C. §1145, in that it has failed to make contributions in accordance with the terms of the plan documents of the Funds, thereby giving rise to an action under 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), and is, thus, subject to the remedies under Section 502(g) of ERISA, 29 U.S.C. § 1132(g) and the Trust Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION

57. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

58. Section 301 of the LMRA, 29 U.S.C. §185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

59. By failing to submit remittance reports due and owing, the Employer has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

60. By failing to pay administrative fees associated with the submission of dishonored checks, the Employer has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

61. By failing to pay the contributions and other amounts owing including interest on the late paid contributions, the Employer has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

62. By failing to timely pay the contributions and other amounts owing, the Employer has violated the CBA and the Trust Agreement, which is incorporated into the CBA.

63. The Funds are thus entitled under the LMRA Section 301(a), as well as the CBA and the Trust Agreement, to the unpaid contributions, interest on the late paid-contributions, interest on the unpaid contributions, liquidated damages, and attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request that the Court enter judgment:

1. Ordering HAROLD ANTHONY to (i) submit all remittance reports due and owing or otherwise pay the estimated contributions determined by the methods set forth in the Trust Agreement, plus all amounts that become due and owing during the pendency of the action; (ii) pay unpaid contributions as determined to be due by self-reported remittance forms plus all amounts that become due and owing during the pendency of the action; plus pay (iii) unpaid contributions as determined by Audit 17-0921; plus pay (iv) interest on the unpaid contributions

at the rate of 1.5% per month from the date when payment was due to the date when payment was made; plus (iv) an amount equal to the greater of (a) the amount of interest due on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions; plus pay (v) audit costs of $500.00 on account of Audit 17-0921; plus pay (vi) administrative fees resulting from the submission of dishonored checks; and

    2.    Ordering HAROLD ANTHONY to pay the Funds their reasonable attorneys' fees and costs, in accordance with Section 502(g)(2)(D) of ERISA, 29 U.S.C. §§ 1132(g)(2)(D) and Article IX, Section 3(a) of the Trust Agreement, in an amount to be determined by the Court upon subsequent application by the Plaintiffs; and

    3.    For such other and further equitable relief as this Court deems appropriate.

Dated: White Plains, New York
       November 28, 2018

Yours, etc.,

TRIVELLA & FORTE, LLP

/s/ *Arthur J. Muller III*

ARTHUR J. MULLER III
*Attorneys for Plaintiffs*
1311 Mamaroneck Avenue, Suite 170
White Plains, New York 10605
Tel. No.: (914) 949-9075